**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
NORTHERN DISTRICT OF TEXAS DIVISION**

| | | |
|---|---|---|
| **IBRAHIM HABBOUB,** | § | |
| | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **SMITH SYSTEMS** | § | |
| **MANUFACTURING CO,** | § | |
| **Defendant.** | § | |

<u>**IBRAHIM HABBOUB'S ORIGINAL COMPLAINT**</u>
**AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Ibrahim Habboub, hereinafter called Mr. Habboub, complaining of and about Smith Systems Manufacturing Co, hereinafter called Defendant, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.     Mr. Habboub, is a legal permanent resident of the United States and the State of Texas and resides in Collin County, Texas.

2.     Defendant Smith Systems Manufacturing Company may be served by serving C.T. Corporations Systems, its officer at 1999 Bryan St. Ste. 900 Dallas, Texas 75201.

**JURISDICTION**

3.     The action arises under 42 U.S.C. Section 1983 et. seq. as hereinafter more fully appears.

1

4.      Under Title VII 2000(e), venue is appropriate in any judicial district in the State in which the unlawful employment practice is alleged to have been committed. Therefore, the United States Court for the Eastern District of Texas is the appropriate venue because Smith Systems Manufacturing Company is located therein.

4.      This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5.      This is an action under Title 42 U.S.C. Section 2000e et. seq. as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of religion and national origin.

6.      This is an action arising under the Common Law of Torts, specifically, Negligence, Intentional Infliction of Emotional Distress.

## CONDITIONS PRECEDENT

6.      All conditions precedent to jurisdiction have occurred or been complied with:  a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Mr. Habboub's Complaint is filed within ninety days of Mr. Habboub 's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7.       Mr. Habboub was hired by Smith Systems Manufacturing Company on May 9th, 2016, with the job responsibility of assembling furniture.

2

8.      Shortly after he began work, the Defendant's Operation's Manager, Robbie Fletcher ("Fletcher") asked Mr. Habboub where he is from. Mr. Habboub responded that he was an Arab from Palestine. The next day Fletcher approached Mr. Habboub and said that that he had researched Palestine and asked Mr. Habboub, "Why are you here?"  Mr. Habboub responded he came with his mother. Fletcher then asked Mr. Habboub, "When are you going back?" Mr. Habboub was shocked and confused by this statement but didn't want to argue with his supervisor, so he did not respond.

9.      Upon Fletcher's realization that Mr. Habboub was an Arab and a Muslim, Fletcher ensued on a campaign of harassment and encouraged other employees to join in.

10.      As the Operations Manager, Fletcher had immediate control over the supervisors of each factory line. Fletcher directed Mr. Habboub's supervisors to run Mr. Habboub's line faster as well as to not allow Mr. Habboub to go to the bathroom without requesting permission or being followed in.

11.      Fletcher allowed and even encouraged other employees to ridicule Mr. Habboub with racial, religious and ethnic slurs.

12.      One such example occurred in January of 2017.  Upon Donald J. Trump's victory in the Presidential elections, Supervisor Brad told Mr. Habboub, "You should get ready to go back now because Trump will deport you."  It was clear to Mr. Habboub that he was only being told this as a result of his Muslim and Arab background.

13.      Other examples of racial and religious humiliation and insults directed at Mr. Habboub occurred continuously throughout his employment for Defendant.  Various employees of Defendant would make statements to Mr. Habboub such as "Fuck you Arabs!", "Fuck you Muslims!", "Fuck you ISIS," "Arab men look like women." Again, it was clear to

Mr. Habboub that these statements were only being made to him as a result of his race and religion and it was also clear that the intention behind these statements was to discriminate and humiliate Mr. Habboub.

14.     During June 2016, the racial and religious insults and harassment against Mr. Habboub increased in severity and intensity as a result of Mr. Habboub's obvious abstention from food during the day, in observance of his religion.  Mr. Habboub was actually told he was stupid for fasting and only stupid people fast, he was part of ISIS, he should go back home, etc.

13.     Fletcher was often a witness to the racial and religious discrimination and harassment. Fletcher never reprimanded the other employees for their discrimantory statements.  In fact, Fletcher would either participate in making the statements or laugh at Mr. Habboub when others would make the statement.

14.     It seemed that Fletcher wanted to remove Mr. Habboub from the company and was looking for ways to make his job harder in the hopes of firing him or forcing him to quit. Fletcher in effect created a pervasive environment of racial and religious discrimination as evidenced through a conspiracy of disparate treatment against Mr. Habboub.

13.     Fletcher actually altered the terms and conditions of Mr. Habboub's work by running Mr. Habboub's line faster, by not allowing Mr. Habboub to go to the bathroom without permission, by instructing other employees to follow Mr. Habboub into the bathroom to look under the stall and see what he was doing and by forcing him to do menial tasks that were not within his job description.

14.     Mr. Habboub was unable to handle the ridicule, harassment and insults.  His only outlet was to seek a few quiet moments in the bathroom to collect himself and be able to

continuously endure the pervasive harassment. Never-the-less Mr. Habboub made sure not to use the bathroom excessively, and certainly not more than other employees.

15. However, Fletcher even took this away from Mr. Habboub by not allowing him to use the bathroom freely as other employees were allowed to do. No one else in the factory needed permission to use the bathroom, but Mr. Habboub was required to seek permission each time and he would sometimes be denied permission or ridiculed for his request. Fletcher would say Mr. Habboub "goes to the bathroom too much". This was untrue.

15. Fletcher then started following Mr. Habboub to the bathroom and would look under the stall while Mr. Habboub was using the toilet, as witnessed by other employees. Fletcher also instructed other employees to follow Mr. Habboub into the bathroom and look at him under the stall, including Supervisor Brad and Supervisor Schumacher.

16. In addition to creating a pervasively hostile work environment, Fletcher's discriminatory action's ultimately resulted in a dangerous work environment, with Mr. Habboub as the target of the danger.

17. As part of the conspiracy of discrimination and harassment, Mr. Habboub was forced to do the work of two people by running his line faster than the lines of any other employees. As a result of the fast line, In February of 2017, a wooden pallet fell off the line, onto Mr. Habboub 's leg causing him severe injury.

18. Mr. Habboub attempted to seek relief with Fletcher since Fletcher oversaw everything at the factory, as well as his immediate Supervisors, namely Supervisor Brad and Supervisor Schumacher. Neither Fletcher nor any of the other Supervisors took any steps to address

the discrimination, harassment, insults, racial slurs, nor the dangerous working environment.

18.     On another occasion, on March 11th, 2017 Mr. Habboub had started work at 6 am. A Quality Assurance employee, Rene, asked Mr. Habboub to stop the line so she may inspect a chair.  Mr. Habboub stopped the line at the request of the Quality Assurance employee, Rene. Tzena Schumacher came to Mr. Habboub , screaming at him, and asking why he had stopped the line. Fletcher then arrived and Supervisor Tzena Schumacher told Fletcher that Mr. Habboub was not working so Fletcher approached Mr. Habboub very quickly yelling and almost hitting Mr. Habboub in his face.  Mr. Habboub told them to ask Quality Assurance Supervisor, Rene, why the line was stopped, and that Mr. Habboub was not wasting time but just following directions from the Quality Assurance Supervisor Rene.

19.     Due to the fact that Mr. Habboub was shaken by the yelling from Tzena Schumacher and Flectcher and the threatened assault by Flectcher, Mr. Habboub went to the restroom to wash his face. Supervisor Robbie Fletcher followed him into the restroom and said, "I am not your father nor your brother, you are going to the restroom too much and you will be fired."  Mr. Habboub responded by saying, "I am in here for a very short time." No other employee was subject to such harassment.

20.      Mr. Habboub reported Fletcher and Tzena Schumacher to the Human Relations (HR) Department of the company. HR Department did not come the same day but Brad, told Mr. Habboub, "Do not report Robbie Fletcher to HR, if you do, you will be fired because Robbie Fletcher is the big supervisor and Robbie Fletcher will fire you when he sees your complaints to HR."

21.     The next day, Mr. Habboub met with Joe Walshe from Human Relations (HR).   Mr. Habboub tried to speak to Mr. Walshe regarding the ongoing harassment that he had endured for so long but Mr. Walshe refused to hear about those Mr. Habboub's experiences. Mr. Walshe said he only wanted to know what happened on the line the day before, with Robbie Fletcher and Tzena Schumacher. After the meeting with Mr. Walshe, no corrective steps were taken by HR to remedy the issue that occurred involving Tzena Shumacher and Fletcher. Mr. Habboub again attempted to seek help from Mr. Walshe in regards to the harassment that he was facing in the workplace, Mr. Walshe then stated to him that "he didn't want to hear it."

22.     Another example showing the pervasiveness of the harassment and discrimination that Mr. Habboub subjected to, was that the Mr. Habboub was required to do work that was not within his job description, and was not required of any other employee on the factory assembly line.   For example, Supervisor Brad told Mr. Habboub to paint the building. Mr. Habboub understood this to be some sort of punishment or demotion since he was being removed from his regular duties and subjected to do this menial task.

23.     While Mr. Habboub was painting the building, Supervisor Brad got angry at him for not doing the job correctly, although Mr. Habboub had no training with painting and was not hired by Defendant to paint.  Supervisor Brad then hit Mr. Habboub while yelling at him and ridiculing him for not doing a good job.  Mr. Habboub did not respond to the assault although he knew that it was racially motivated and that no other employee was ever treated in this manner. Mr. Habboub was terribly disturbed emotionally.

24.      After the physical assault by Supervisor Brad, Mr. Habboub called Human Resources again, now to report Brad.  This time the Human Resources Department did take action

7

by fired Brad.   However, HR still did nothing about the pervasive and continuous discrimination and humiliation that Mr. Habboub was subjected to.

25.   One of the witnesses to the incident that occurred on March 11th  Rodger Wilson.

26.   Rodger Wilson informed Mr. Habboub that he could not speak to Mr. Habboub and he "could not be his friend" because he would get fired by HR, further evidencing the conspiracy by upper management and HR to harass Mr. Habboub.

27.   Rodger later asked Mr. Habboub if Mr. Habboub had an attorney.  Mr. Habboub replied that he did not have an attorney. Rodger went into the HR room, HR then called Mr. Habboub into their office and instructed Mr. Habboub not to talk about attorneys at work. Mr. Habboub responded that he was not and was just answering a question that Rodger Wilson had asked him.

28.    Mr. Habboub went out of the HR office and saw Rodger Wilson immediately go into the HR office and when Rodger Wilson came back out he asked Mr. Habboub  about what happened when  Mr. Habboub  was with HR.  Mr. Habboub responded to Rodger Wilson, that he did not want to speak to Rodger Wilson and that Rodger Wilson was causing him trouble.

29.   After Rodger Wilson heard that response from Mr. Habboub he went back to HR office, Fletcher was also in the HR office at the time.

30.   Shortly thereafter, during Mr. Habboub's break time, Mr. Habboub was called into the Human Resources Department office and was told that Mr. Habboub shouldn't have spoken to Rodger Wilson about attorneys, Mr. Habboub responded that he did not speak to Rodger about anything and that it was Rodger Wilson that kept asking Mr. Habboub

questions.  Mr. Joe Walshe insisted that Mr. Habboub concede to an apparent lie, which he refused to do.

31.     Joe Walshe, from the Human Resources Department then demanded that Mr. Habboub sign a letter stating that  Mr. Habboub  did not obey the supervisor and spoke to people about attorneys.  Mr. Habboub refused to sign because he did not speak English well and needed someone to translate the letter he was going to sign.  Mr. Habboub asked that Mr. Habboub 's brother be called so he can translate the letter. This request was refused by HR, and Joe Walshe angrily said that if he would not sign the letter he would be fired. Mr. Habboub still refused and therefore he was fired.

## NATIONAL ORIGIN DISCRIMINATION

32.     Mr. Habboub re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

33.     Smith Systems Manufacturing Co. through its employees intentionally engaged in National Origin Discrimination of Mr. Habboub.

34.     Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides that it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."

34.     Mr. Habboub belonged to a protected class under Title VII of the Civil Rights Act of 1964 .

35.     Defendant through its employees terminated Mr. Habboub from a position that he was qualified for, due to his national origin.

36.     Other similarly situated employees were treated more favorably than Mr. Habboub.

37.     Smith Systems Manufacturing Co knew of the discrimination and acted with malice and
reckless indifference to the federally protected rights of Mr. Habboub.

38.     Smith Systems Manufacturing Co is liable through the doctrine of respondeat superior.

39.     Mr. Habboub suffered damages for which he herein sues.


## HOSTILE WORK ENVIRONMENT

40.     Mr. Habboub re-alleges and incorporates by reference the preceding paragraphs as
though fully set forth herein.

41.     Defendant through its employees intentionally engaged in harassment of Mr. Habboub.

42.     From the time that Operations Manager, Fletcher discovered that Mr. Habboub was an
Arab Muslim he instituted a system of severe and pervasive harassment against Mr.
Habboub.

43.     The harassment and discrimination was unwelcomed by Mr. Habboub and Mr. Habboub
made several complaints to his Supervisors and to HR in an attempt to seek relief.

44.     When racial and religious insults and slurs were made against Mr. Habboub, no steps
were no steps taken to stop them or prevent them from occurring in the future, even
though the Supervisors were witnesses to them and sometimes even participating in
making them.

45.     Fletcher and other Supervisors often joined in the unwelcomed harassment.   Mr.
Habboub feel distraught, embarrassed, unwelcomed, and suffered from great distress and
anxiety.

46.  In addition to the name-calling and racially discrimatory comments, Mr. Habboub was not allowed to use the restroom without constant harassment. When he did go to the restroom, he was rushed out by other co-workers sent by supervisors. Only Mr. Habboub had to ask for permission to use the restroom, while no other employee was required to do the same. Fletcher also looked under the stall of the restroom while Mr. Habboub was using the toilet, invading his privacy and causing distress. Because of the problems around using the restroom Mr. Habboub had to go long hours without using the restroom, causing him great discomfort.

47.  Mr. Habboub's assembly line was set to run faster than those around Mr. Habboub and he would not have the help needed to keep up with the speed and was ultimately injured as a result of this.  No other employee faced such issues on the line.

48.  Mr. Habboub was required to work menial jobs around the factory such as painting and mopping the floors. This was not part of his job requirement. He was singled out to do the work as a form of harassment and ridicule and to make the employment difficult for Mr. Habboub.

49.  Mr. Habboub belonged to a protected group and from the above facts was subjected to continuous, severe and pervasive unwelcomed harassment.

50.  The harassment affected Mr. Habboub's terms, conditions and privileges of employment by producing an environment that was difficult for Mr. Habboub to perform his job functions and even dangerous to be in. Mr. Habboub was assaulted on one occasion and nearly assaulted on another. In addition, the barrage of vulgar language was continuous against Mr. Habboub creating an abusive workplace.

51.     Fletcher and HR, employers of Mr. Habboub, knew of the harassment and failed to take

        prompt and remedial action, but instead terminated him in retaliation when they thought

        he had obtained a lawyer.

52.     Mr. Habboub with severely offended by the racist remarks.   He felt insulted and

        depressed and understood that Fletcher and the other employees were not joking but were

        in fact ridiculing him on the basis of his race and religion.


### NEGLIGENT HIRING, SUPERVISION, TRAINING AND RETENTION
### BY SMITH SYSTEMS MANUFACTURING CO

53.     Mr. Habboub alleges that the conduct of Defendant constituted hiring, supervision,

        training and retention.

54.     Mr. Habboub alleges that Defendant did not properly screen, train, evaluate, investigate,

        or take any reasonable steps to determine whether its employees were unfit, incompetent,

        or a danger to third parties.

55.     Defendant knew or should have known that its employees were committing illegal and

        harmful acts against Mr. Habboub, creating a risk of danger to Mr. Habboub.

56.     To the contrary, Defendant allowed its employees to run free in pursuing their illegals

        acts and created an environment where lower level employees knew that making a report

        against upper management would not result in remedy rather would result in their own

        termination from employment.

57.     Defendant's have a duty of reasonable care in screening individuals who, when hired,

        may pose a threat of injury to employees.   Mr. Habboub was physically injured as a result

of an assault by one of Defendant's employees in upper level management and an
attempted assault by another employee in upper level management.

58.    Defendant's carelessness in taking corrective action against its employees after learning
of the the discrimination, assault and harassment amounted to negligent retention.

59.    Defendant's failure to use reasonable care in training and supervising its employees,
especially anti-discrimatory training and cultural sensitivity training resulted in
Defendant's employees perpetuated serious harm against Mr. Habboub.

60.    Defendant's failure to reasonably control or monitor the actions taken by their
employees, especially those in upper level management, resulted in severe injust against
Mr. Habboub.

61.    Defendant's failure to exercise reasonable care in the hiring, supervision, training and
retaining of its employees, especially its upper level management, was the cause of
damages to Mr. Habboub,  for which  Mr. Habboub  hereby sues.


**RETALIATION BY SMITH SYSTEMS MANUFACTURING CO**

62.    Mr. Habboub re-alleges and incorporates by reference the preceding paragraphs as
though fully set forth herein.

63.    Defendant through its employees instituted a campaign of retaliation after Mr. Habboub
complained to Human Resources of the harassment.  In fact, Mr. Habboub was warned
by a seasoned co-worker, that if he filed a complaint with HR, he would be fired.
Ultimately that is exactly what happened.

64.    Defendant through its employees asked Mr. Habboub if he had obtained an attorney.

65.    Mr. Habboub responded in the negative and asked his co-workers not to speak to him but

was called into the office and terminated for "speaking about attorneys."

66.  This termination was in retaliation and is due to Mr. Habboub exercising his rights by

opposing an unlawful discriminatory practice, by reporting his harassment to Defendant's

Human Resources department.

67.  Mr. Habboub suffered damages for which Mr. Habboub  herein sues.

### INVASION OF PRIVACY BY SMITH SYSTEMS MANUFACTURING CO

68.  Mr. Habboub re-alleges and incorporates by reference the preceding paragraphs as

though fully set forth herein.

69.  Defendant intentionally invaded Mr. Habboub's privacy by intruding on his solitude,

seclusion, or private affairs.

69.  Defendant, Robbie Fletcher, would wait until Mr. Habboub was in the mens' restroom

and then go in and look under the stall while he was using the restroom or send other

employees to look under stall.

70.  This invasion was highly offensive to Mr. Habboub and would be highly offensive to a

reasonable person.

71.  Mr. Habboub was injured because of the conduct of Defendant.

72.  Mr. Habboub suffered damages for which Mr. Habboub  herein sues.

### CONSPIRACY

73.  Mr. Habboub re-alleges and incorporates by reference the preceding paragraphs as

though fully set forth herein.

74. Defendant through its employees, Fletcher, Tzena Schumacher, Brad and others made an agreement that would institute a system of unlawful harassment and isolation in the workplace against Mr. Habboub.

75. Co-workers under the above supervisors were told to rush Mr. Habboub out of the bathroom.

76. Rodger Wilson told Mr. Habboub that he "could not be friends with Mr. Habboub or he would be fired."

77. Only Mr. Habboub's assembly line would continuously be run faster, irrespective of the immediate supervisor overseeing that line on any particular day.

78. When complaints were brought to upper level management's attention no action was taken, showing that they were aware of the harassment and were complicit in allowing it to occur.

79. Mr. Habboub suffered damages for which  Mr. Habboub  herein sues.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## BY SMITH SYSTEMS MANUFACTURING CO

80. Mr. Habboub re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

81. Defendant intentionally or recklessly publicly ridiculed Mr. Haboub, insulting his religion and country of origin.

82. Defendant intentionally or recklessly followed Mr. Haboub into the restroom and would look under the stall while he used the restroom.

83. Defendant's conduct was extreme and outrageous, causing Mr. Habboub severe emotional and mental distress.

84.     Mr. Habboub suffered damages for which Mr. Habboub herein sues.

## Discrimination

85.     Mr. Habboub re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

86.     Mr. Habboub was a member of a protected class.  Mr Habboub is a member of a protected class by being a Muslim and Arab.

87.     Mr. Habboub was subject to adverse employment action.

88.     Mr. Habboub was replaced by someone outside of the protected class, or in case of disparate treatment, was treated more harshly than others who were similarly situated.

90.     Mr. Habboub was qualified for the position of factory assembly line worker but was terminated due to non performance based reasons.

91.     Mr. Habboub due to his religion and national origin was harassed, no one in the factory was apparently his religion or national origin and were treated differently than him.

## DAMAGES

92.     Mr. Habboub sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

      a.      All costs necessary to rectify Mr. Habboub ;

      b.      All reasonable and necessary Attorney's fees incurred by or on behalf of Mr. Habboub ;

c.      Back pay from the date that  Mr. Habboub  was denied equal pay for equal work and  interest  on  the  back  pay  in  an  amount  to  compensate   Mr. Habboub  as the Court deems equitable and just;

d.      All reasonable and necessary costs incurred in pursuit of this suit;

e.      Emotional pain;

f.      Front pay in an amount the Court deems equitable and just to make  Mr. Habboub  whole;

g.      Inconvenience;

h.      Loss of enjoyment of life;

i.      Mental anguish in the past;

j.      Mental anguish in the future;

k.      Reasonable medical care and expenses in the past.  These expenses were incurred by Ibrahim Habboub and such charges are reasonable and were usual and customary charges for such services in Collin County, Texas;

l.      Loss of earnings in the past;

m.      Loss of benefits; and

n.      Deprivation of seclusion.

## EXEMPLARY DAMAGES

93.    Mr. Habboub  would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the  Mr. Habboub .  In order to punish said Defendant for engaging in unlawful business

practices and to deter such actions and/or omissions in the future,  Mr. Habboub  also seeks recovery from Defendant for exemplary damages.

## SPECIFIC RELIEF

94.    Mr. Habboub  seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

        a.      Defendant must provide a sensitivity training regarding the Islamic faith to all employees to prevent future harassment and discrimination.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**,  Mr. Habboub , Ibrahim Habboub, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the  Mr. Habboub  against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the  Mr. Habboub  may be entitled at law or in equity.

Respectfully submitted,

Querishi & Salejee PLLC.


By:_____

      Farhana Querishi
      Texas Bar No. 24082105
      E-Mail:  farhana@qslawfirm.com
      P.O.  BOX 3402
      McKinney, TX 75070
      Tel. (214) 843-0302
      E-Mail:  farhana@qslawfirm.com
      Attorney for  Mr. Habboub
      Ibrahim Habboub

**MR. HABBOUB HEREBY DEMANDS TRIAL BY JURY**